IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMY L. HILTABIDEL, | ) | |
| | ) | |
| Plaintiff, | ) | 2:08-cv-409 |
| v. | ) | |
| | ) | |
| UNIONTOWN NEWSPAPERS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION AND ORDER

Pending before the Court is MOTION TO COMPEL DISCOVERY, FOR LEAVE TO TAKE LIMITED ADDITIONAL DISCOVERY AND FOR MODIFICATION OF SCHEDULING ORDER, docket entry number 59 (Doc. # 59), filed by Plaintiff, and a response in opposition filed by Defendant (Doc. # 62).  The motion is ripe for disposition.

In her Amended Complaint, Plaintiff alleges a number of causes of action, to include having been subjected to a hostile work environment due to her gender and retaliation following conversations with her former supervisor about having been subjected to that which she considered to be inappropriate situations with clients and co-workers.  For the reasons that follow, Plaintiff's motion will be denied.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff initiated this action by filing a complaint on March 25, 2008 (Doc. # 1).  Plaintiff amended her complaint on May 27, 2008 (Doc. # 10), alleging sexual harassment and retaliation claims under Title VII and the Pennsylvania Human Relations Act ("PHRA").  Plaintiff worked for the Defendant Uniontown Newspapers, Inc. from September 2003 until her resignation on June 29, 2007.  From 2003 until October 2006, she worked as a commissioned and salaried sales person in Defendant's retail advertising department selling print advertisements to customers,

and was under the supervision of Anne Renne. In October 2006, Plaintiff accepted a position as a sales representative in the I-Media Department under the supervision of John Voytek. Plaintiff held this position until her resignation on June 29, 2007. During her time in the I-Media Department, Plaintiff's responsibilities included selling advertising on the Defendant's internet websites, particularly the "WhatUDrive" website, a site devoted to the sale of automobiles. The Amended Complaint alleges that she experienced actions and comments of a direct and/or indirect sexual nature which created a hostile work environment. The Amended Complaint further alleges that she suffered an adverse employment action, in the form of being denied commissions, in retaliation for her complaints to her former supervisor about this alleged sexual harassment.

Plaintiff's motion seeks, *inter alia*, to compel supplemental responses to her previous requests for discovery and to compel the deposition of John Voytek.[1] Plaintiff's basis for her demands is that she "received information" at some unspecified point that Voytek was "terminated or asked to resign because of inappropriate electronic accessing of sexually explicit material during work hours on his workplace computer." Doc. # 59. Defendant responded opposing the motion. Doc. # 62. Defendant's response included an affidavit from its Publisher, Val Laub, attesting to the fact that Voytek resigned his position, and that his resignation did not involve complaints of sexual harassment or relate to complaints by any other employees of the Defendant in any way. Doc. # 62 at exhibit A.

## STANDARD OF REVIEW

Fed.R.Civ.P. 26(b)(1) permits the parties to "obtain discovery regarding any matter, not

---

[1] John Voytek was previously deposed in relation to this matter on January 30, 2009.

privileged, that is relevant to the claim or defense of any party ..."  Relevancy is defined as "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case ..."  Fed.R.Civ.P. 26(b); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 2389, 57 L.Ed.2d 253 (1978);  *Lugosch v. Congel*, 218 F.R.D. 41, 44 (N.D.N.Y.2003) ("[t]o be relevant, the request for information must be 'germane' to the subject matter of the claim, defenses or counterclaims, though not necessarily limited by such pleadings, and is not controlled by whether it will be admissible at trial").

While the scope of discovery is broad, a district court has wide discretion in managing the discovery phase of a case.  *See e.g., Cooper Hospital/Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 119, 127 (D.N.J.1998).  Fed.R.Civ.P. 26(b)(2)(C), which governs the scope of discovery, permits the court to limit discovery if the request is "unreasonably cumulative or duplicative" or "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2)(C) (i, iii);  *see also Bayer A.G. v. Betachem, Inc.*, 173 F.3d 188 (3d Cir.1999) ("although the scope of discovery ... is unquestionably broad, this right is not unlimited and may be circumscribed").  Here, the Court must consider whether the discovery sought is relevant to Plaintiff's allegations of a hostile work environment and retaliation, or is reasonably calculated to lead to the discovery of admissible evidence.

## LEGAL ANALYSIS

Both Title VII and the PHRA prohibit employment discrimination based on an individual's sex.  42 U.S.C. 2000e-2(a); 43 P.S. §§ 951 *et seq.*  A plaintiff who alleges a hostile

3

work environment claim in violation of Title VII must establish an atmosphere or environment sufficiently severe or pervasive so as to alter her employment conditions and create an abusive working environment.  *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399 (1986); *see Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 22, 114 S.Ct. 367 (1993)("[T]he very fact that the discriminatory conduct was so severe or pervasive that it created a work environment abusive to employees because of their ... gender ... offends Title VII's broad rule of workplace equality.")  Beyond that, a plaintiff who alleges constructive discharge in violation of Title VII must further establish that the abusive working environment became so intolerable given the totality of the circumstances that her resignation qualified as a fitting response.  *Pennsylvania State Police v. Suders*, 542 U.S. 129, 139, 124 S.Ct. 2342 (2004)(citations omitted).

      Plaintiff's hostile work environment claim is based upon a number of factual predicates that are important to note.  According to Plaintiff, after transferring to the I-Media Department, supervisor Voytek made comments in the workplace about her appearance, such as Voytek claiming to have received compliments for hiring "good looking sales reps", and Voytek making comments to the effect that she "should go out and get contracts signed by clients because they would rather look at [her] than at him."  *See* Doc. # 62 at Exhibit B, Plaintiff's deposition transcript at pp. 82-83.  Further, Plaintiff claims her work environment involved a) what she considered to be inappropriate requests, namely a request in either late March or early April 2007 to take a business associate of a sister newspaper from Philadelphia visiting Defendant's site to dinner one evening during his visit and a second request to join Voytek as he traveled overnight to a meeting in Beaver, PA, and b) being placed in what she considered to be an inappropriate

situation with a potential customer also by Voytek. The situation complained about involved a meeting in a restaurant in Uniontown, PA, with Voytek and a prospective male client for Defendant's entertainment based website. Voytek and this potential customer apparently knew one another prior to the meeting, and Plaintiff was told by Voytek that the customer requested her presence at the meeting, despite the fact that she had never met the potential customer. Plaintiff also claims that another employee in the I-Media Department was responsible for selling advertising on the entertainment site, yet was not part of the meeting. In the restaurant, all three were seated at the bar Plaintiff between the customer and Voytek. The customer's arm was around the back of the Plaintiff's chair throughout the course of the meeting and, at one point, his leg made contact with Plaintiff's leg.[2]

     Plaintiff's retaliation claim is based upon her claims that the conditions of her employment were adversely altered after she complained about the work environment to Renne, her former supervisor from the retail advertising department, on April 23, 2007. More specifically, Plaintiff claims that she approached Renne to complain about sexual harassment, and particularly about the meeting at the bar. Following that meeting, Renne apparently contacted Voytek, who subsequently implemented a system regarding Plaintiff's meeting with prospective customers. In particular, under the policy Plaintiff was required to have a retail advertising representative schedule and also attend appointments with potential customers. Plaintiff claims this limitation significantly reduced her ability to meet prospective clients

---

[2] The nature and extent of the contact between the legs is a matter of factual dispute, with Plaintiff claiming that the customer rubbed his leg against hers to the point where she felt uncomfortable and pulled her leg away, while Defendant characterizes the contact as a bump that occurred as the two were being seated.

because retail advertising representatives had an incentive not to schedule such meetings, and were therefore uniformly uncooperative.[3]  Given that Plaintiff's earnings were based upon commissions for internet advertising she sold, she was unable to earn commissions, which she claims necessitated her resignation.

Taken as a whole, Plaintiff's claims as they relate to Voytek involve his supervisory decisions and conduct.  Plaintiff makes no claim that Voytek himself ever exhibited personal conduct or behavior of a sexual nature to Plaintiff.  It is the conduct in Voytek's professional capacity that is relevant to Plaintiff's claims, not his personal behavior.  While the Court lacks any detail about the nature and circumstances surrounding Voytek's resignation, the affidavit of Defendant's Publisher eliminates any basis for Plaintiff or the Court to believe that the resignation was due to conduct involving other employees or subordinates, was the result of any complaint of sexual harassment by other employees, or even that it was the result of any kind of complaint by other employees.  Likewise, the Court notes that Plaintiff's claims do not suggest any inappropriate use of the computer by either Voytek or any other employee of the Defendant.  As such, the Court can see no basis to justify supplemental or additional discovery insofar as the circumstances surrounding Voytek's resignation in 2009 appears by affidavit of Val Laub to be unrelated to the claims of Plaintiff and thus neither relevant nor reasonably calculated to lead to

---

[3] Once again, the facts of this sequence of events is disputed by Defendant.  Defendant disputes Plaintiff's version of the content of the discussion between Renne and Plaintiff.  Defendant characterizes the discussion as one involving general concerns about Plaintiff's job performance and Plaintiff "expressing some discomfort" over the customer meeting that occurred at the bar, yet disputes that it was a report of sexual harassment.  Further, Defendant disputes that the policy was made in retaliation for any concerns expressed by Plaintiff in her meeting with Renne.  Defendant avers that those conditions were established in order to assist Plaintiff because such introductions to customers relieved Plaintiff of the responsibility to make "cold calls" to customers.

the discovery of admissible evidence.

Accordingly, MOTION TO COMPEL DISCOVERY, FOR LEAVE TO TAKE LIMITED ADDITIONAL DISCOVERY AND FOR MODIFICATION OF SCHEDULING ORDER (Doc. # 59) is **DENIED**.

SO ORDERED this 22nd day of January, 2010.

BY THE COURT:

s/  Terrence F. McVerry
United States District Court Judge

cc: Jane Lewis Volk, Esquire
Email: jlv@muslaw.com
Mary C. McGinley, Esquire
Email: mcm@muslaw.com

Charles Kelly, Esquire
Email: ckelly@kellyhayden.com
Kristin A Lawson, Esquire
Email: klawson@kellyhayden.com